**Entered on Docket**
**December 23, 2009**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: December 23, 2009**



```
_____
```
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>QUAIL LAKE ESTATES ASSOCIATES,<br>L.P., etc.,<br>        Debtor.<br>_____/ | No. 08-41296 T<br>Chapter 11 |
| QUAIL LAKE ESTATES ASSOCIATES,<br>L.P.,<br>        Plaintiff,<br>  vs.<br>BANKFIRST, etc., MTC FINANCIAL<br>CORP., etc.,<br>        Defendants.<br>_____/ | A.P. No. 09-4292 AT |

**MEMORANDUM OF DECISION RE**
**MOTION TO DISMISS BY THE FDIC**

The motion to dismiss filed by the Federal Deposit Insurance Corporation as receiver for defendant BankFirst ("BankFirst") came on for hearing before the above-captioned Court on December 14, 2009. Appearances were stated on the record. At the conclusion of the hearing, the Court took the motion under submission. Having

considered the evidence presented and the argument made, both written and oral, the Court now concludes that BankFirst's motion to dismiss the first and second claims for relief in the complaint should be granted and that BankFirst's motion to dismiss the fourth and fifth claims for relief should be denied. The bases for the Court's conclusions are set forth below.[1]

## BACKGROUND

The above-captioned bankruptcy case was filed on March 19, 2008. At that time, the plaintiff (the "Debtor") was the owner of certain unimproved real property located in Nevada County, California (the "Development Property"). The Development Property was encumbered by a first deed of trust in favor of BankFirst. A foreclosure sale had already been scheduled prior to the commencement of the bankruptcy case. BankFirst continued the sale from time to time during the pendency of the case.

An order confirming the Debtor's reorganization plan (the "Plan") was entered on December 18, 2008. The Plan provided that the Debtor would receive a discharge on the effective date. Article XI, paragraph G. The effective date of the Plan was defined as the twentieth business day after entry of the confirmation order. Article II, paragraph A-22. Thus, the Plan became effective and the Debtor received a discharge on January 20, 2009. The Plan required the Debtor to meet certain benchmarks in the development process by

---

[1] The Court makes no ruling with respect to the third claim for relief which was not adequately addressed by either BankFirst or the Debtor.

Case: 09-04292   Doc# 25   Filed: 12/23/09   Entered: 12/23/09 15:26:14   Page 2 of 15

certain dates.  One of the requirements was that the Debtor pay all pre-confirmation delinquent property taxes, penalties, and interest encumbering the Development Property within 30 business days of the effective date of the Plan.  The Plan provided that, when the Debtor had obtained sufficient funding to make the payments required to be paid within the first 30 days of the effective date, the Plan would be deemed to be substantially consummated.  At that point, all remaining property of the estate would revest in the Debtor, which would continue in existence as a Reorganized Debtor.  Article VIII, paragraph C.

The Plan provided that, if the Debtor failed to make any payment contemplated by the Plan, BankFirst would be "entitled to exercise all remedies available under non-bankruptcy law to enforce its claim...."  The deadline for the Debtor to pay the pre-confirmation delinquent property taxes was March 4, 2009.  The Debtor failed to make this payment.  On March 23, 2009, BankFirst conducted a foreclosure sale with respect to the Development Property, obtaining title to the Development Property by virtue of a credit bid. BankFirst did not record a new notice of sale before doing so.

Although BankFirst advised the Debtor of the default and of pendency of the sale, it did not expressly advise the Debtor that it intended to proceed with the sale on March 23, 2009.  The Debtor responded that it had been unable to raise the funds to make the tax payment due to questions recently raised by the Nevada County planning authorities about the Debtor's plans for dealing with the project's wastewater.  The Debtor stated that it expected to resolve

3

those questions within ten days at which point it expected to be in a position to cure the default. There was apparently no further communication between the parties prior to the foreclosure sale. BankFirst did not respond to the letter.

## DISCUSSION

The complaint alleges that, at the time of the foreclosure sale, the Development Property was still property of the Debtor's bankruptcy estate and that the foreclosure sale violated the automatic stay of 11 U.S.C. § 362. The first two claims for relief seek damages for willful violation of the automatic stay and a declaration that the foreclosure sale was void.[2] This issue is discussed in Section A below.

The complaint also alleges that the Plan modified the terms of the BankFirst note and deed of trust and discharged the old obligation. As a result, the Debtor's default under the Plan was a new default under a new obligation. For that reason, even if the automatic stay had been vacated, BankFirst was not entitled to proceed with its foreclosure sale without first recording a new notice of default and new notice of sale. Therefore, the foreclosure

---

[2]The third claim for relief alleges that the foreclosure sale was an unauthorized post-petition transfer pursuant to 11 U.S.C. § 549 and asks the Court to avoid the transfer on that basis. BankFirst moves to dismiss this claim as well on the ground that there was no more automatic stay at the time of the foreclosure sale. Its discussion does not acknowledge that the claim is based on an entirely different bankruptcy provision. In its opposition, the Debtor does not focus on this claim either. As a result, the Court will make no ruling with respect to the third claim for relief.

4

sale conducted by BankFirst on March 23, 2009 was improper under state law. This issue is discussed in Section B below.

**A. DID THE FORECLOSURE SALE VIOLATE THE AUTOMATIC STAY?**

The filing of a bankruptcy petition gives rise to an automatic stay of all actions by creditors to collect their pre-petition debts from the debtor and to enforce liens securing those debts against property of the bankruptcy estate. 11 U.S.C. § 362(a). The automatic stay terminates with respect to acts to enforce liens against the debtor's property when the property is no longer property of the debtor's bankruptcy estate. 11 U.S.C. § 362(c)(1). It terminates with respect to acts against the debtor when the case is closed or dismissed or the debtor is granted or denied a discharge. 11 U.S.C. § 362(c)(2)(A)-(C).

BankFirst contends that, on the effective date of the Plan, the bankruptcy estate was terminated so that the Development Property was no longer property of a bankruptcy estate. Therefore, the automatic stay did not bar BankFirst from proceeding with its foreclosure sale. In support of this contention, it cites 11 U.S.C. § 1141(b) and three bankruptcy cases: <u>In re Ernst</u>, 45 B.R. 700 (Bankr. D. Minn. 1985), <u>In re Balogun</u>, 56 B.R. 117 (Bankr. M.D. Ala. 1985), and <u>In re Smith and Kourian</u>, 216 B.R. 686 (Bankr. 1st Cir. 1997).

Section 1141(b) states, in pertinent part, that:

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> ...

5

In Ernst, a bankruptcy court dismissed as moot a post-confirmation motion for relief by a secured creditor. The court noted that, pursuant to 11 U.S.C. § 1141(b), in the absence of a plan provision stating otherwise, all estate property is vested in the debtor on confirmation and the estate ceases to exist. The Ernst court found that the plan did not contain any contrary provision. The debtor argued that, because the plan provided that the court would retain jurisdiction over case related disputes, the automatic stay remained in place. The Ernst court rejected this argument. Id. at 702-3. Balogun follows Ernst under similar factual circumstances. Balogun, 56 B.R. at 118-19.

In Smith, the issue was not whether the debtor's real property was still property of the estate after confirmation. Rather, the issue was whether the confirmed plan had extinguished the secured creditor's lien by failing to expressly provide for its continuation. The bankruptcy court concluded that the lien was not extinguished because the plan "unambiguously" provided for the real property to revest in the debtor subject to all existing mortgages. The Bankruptcy Appellate Panel affirmed. Smith, 216 B.R. at 689-90.

As in Ernst, BankFirst contends that neither the Plan nor the order confirming the Plan provides that the Development Property will remain property of the Debtor's bankruptcy estate until the Plan is substantially consummated. It concedes that Article VIII provides that, when the Plan is substantially consummated, "all remaining property" will revest in the Debtor. However, it contends that, because "all remaining property" should be read to exclude the

6

Development Property because, elsewhere in the Plan, the Development Property is referred to as the QLE Property.

The Court finds this argument unpersuasive. Article VIII, paragraph C of the Plan provides, in pertinent part, as follows:

> The Plan shall be deemed to be substantially consummated ("Substantial Consummation") when the Debtor has obtained funding of the New IMC Loan in sufficient amount to satisfy the cash outlays provided for under this Plan coming due within the first 30 days after the Effective Date.
>
> As of such Substantial Consummation, *all remaining property* of the Estate shall revest in the Debtor which shall continue in existence as the Reorganized Debtor. As of such Substantial Consummation, the Reorganized Debtor will be vested with *all property of the Estate*, including without limitation and free and clear of all Claims.... [Emphasis added.]

Even if "all remaining property" could arguably be read to exclude the Development Property, "all property of the Estate" in the next sentence cannot be. Thus, this argument fails.

Alternatively, BankFirst contends that it was not required to seek relief from the automatic stay because the Plan provided that BankFirst could exercise its nonbankruptcy rights in the event of a default. It did not require BankFirst to first seek relief from the automatic stay in the event substantial consummation had not yet occurred.

In the complaint, the Debtor alleges that it informed BankFirst prior to the foreclosure sale that it intended to promptly cure the March 4, 2009 tax payment default. BankFirst contends that the Plan did not give the Debtor the right to cure this default. Its argument

7

turns on the placement of a comma in Article VI, paragraph A-1(i) of the Plan:

> If the Reorganized Debtor fails to make any payment contemplated by this Plan, fails to satisfy any of the Benchmarks provided for herein, *or otherwise defaults under the terms of the applicable note and deed of trust as modified by this Plan and fails to promptly cure any such default*, the holder of the Class A-1 Claim [i.e., BankFirst] shall be entitled to exercise all remedies available under non-bankruptcy law to enforce its claim as modified hereby.

BankFirst notes that a comma sets of the Debtor's obligation to make payments under the note and deed of trust, and its right to promptly cure any such default, from the Debtor's other obligations under the Plan. Clearly, it contends, the right to cure related only to payments under the note and deed of trust. The Plan did not give the Debtor the right to cure a default with respect to any other obligations.

Moreover, BankFirst argues, limiting the right to cure to these obligations made sense. The note and deed of trust provided precise time frames limiting the right to cure. Applied to other types of defaults, with no such provisions, the phrase "promptly cure" was impracticably vague.

The Debtor contends that, because the Plan did not expressly relieve BankFirst from the obligation of requesting relief from the automatic stay after confirmation but before substantial consummation, the Plan should be read as requiring it. The Debtor also contends that limiting the application of the right to cure to defaults on the note and deed of trust places too much weight on the

8

placement of a comma. The Court disagrees. BankFirst's reading of the Plan makes sense, both grammatically and logically.

Moreover, the Court agrees with BankFirst that the Plan did not require BankFirst to request relief from the automatic stay before exercising its nonbankruptcy law rights in the even of a default, even if the Plan had not yet been substantially consummated. Paragraph A-1(i) of Article VI states as follows:

> i. If the Reorganized Debtor fails to make any payment contemplated by this Plan, fails to satisfy any of the Benchmarks provided for herein, or otherwise defaults under the terms of the applicable note and deed of trust as modified by this Plan and fails to promptly cure any such default, the holder of the Class A-1 Claim shall be entitled to exercise all remedies available under non-bankruptcy law to enforce its claim as modified hereby.

There is no limitation on this right. If the Debtor had wished to require BankFirst to request relief from the automatic stay in the event of a default prior to substantial consummation, it should have said so here. In essence, the Debtor stipulated that BankFirst would have relief from the automatic stay under these circumstances. When the Court confirmed the Plan, it approved the stipulation.

In sum, the Court concludes that, while the Development Property remained property of the Debtor's bankruptcy estate on the date of BankFirst's foreclosure sale, the foreclosure sale did not violate the automatic stay.

**B. WAS BANKFIRST REQUIRED TO COMMENCE NEW FORECLOSURE PROCEEDINGS WHEN THE DEBTOR DEFAULTED UNDER THE PLAN?**

The Debtor also contends that the foreclosure sale was invalid under state law. It contends that, when the Plan became effective,

the Debtor received a discharge of BankFirst's pre-confirmation debt. This debt was then replaced by a new obligation, which was created by the Plan and on which the Debtor was current as of the effective date. When the Debtor defaulted on this new obligation by failing to pay the pre-confirmation delinquent property taxes, BankFirst was required by state law to record a new notice of default and, if the default was not cured, to record a new notice of sale. BankFirst was not entitled to bypass these safeguards and proceed directly to sale, pursuant to a notice of default based on a default on the discharged debt. Based on this legal theory, the fourth claim for relief in the complaint seeks rescission of the sale, and the fifth claim for relief seeks damages for wrongful foreclosure.

BankFirst moves to dismiss these claims for failure to state a claim. BankFirst contends that the Debtor's allegation in the complaint that confirmation of the Plan discharged the old debt misstates the law. BankFirst notes that the Plan specifically provides for retention of BankFirst's lien on the Development Property. Article VI, paragraph A-1(a). As a result, BankFirst contends, confirmation of the Plan did not cure the Debtor's pre-petition defaults. In support of this contention, BankFirst cites In re Peters, 101 F.3d 618, 620 (9th Cir. 1996).

In Peters, a chapter 13 debtor contended that a secured creditor had violated the automatic stay by merely continuing the date of the foreclosure sale of the debtor's house after confirmation of the debtor's plan. The plan provided for a cure of the arrearages on the secured creditor's claim. However, at the time the secured creditor

10

continued the foreclosure sale, the arrearages had not yet been paid in full. The debtor contended that confirmation constituted a cure of the arrearages even before payment was made.

The Peters court held to the contrary, finding that it was contrary to the plain language of 11 U.S.C. § 1322(b)(5). It noted that § 1322(b)(5) provides that, when the last payment on a secured claim falls after the end of the plan, the plan may provide for a cure of the arrearages "within a reasonable time." The Ninth Circuit reasoned that, if the arrearages were "cured" immediately on confirmation, § 1322(b)(5) would not have provided for their cure "within a reasonable time." Peters, 101 F.3d at 619. BankFirst contends that, as in Peters, the Debtor's default on its secured claim would not be "cured" until the past due payments were made.

As further support for its position, BankFirst cites Tully v. World Savings & Loan Ass'n, 56 Cal. App. 4th 654, 664 (1997). In Tully, a homeowner filed an action to set aside a foreclosure sale as improper. The homeowner contended that, because he had filed bankruptcy the same day the third notice of sale was recorded, the lender was required to obtain relief from the automatic stay and to publish a new notice of sale before proceeding with the sale. The Tully court rejected this contention. It noted that the Ninth Circuit had held that, by continuing a foreclosure sale, a lender was merely maintaining the status quo and did not violate the automatic stay. See Matter of Roach, 660 F.2d 1316, 1318-19 (9th Cir. 1991), cited in Tully, 56 Cal. App. 4th at 662.

Alternatively, in Tully, the debtor contended that, because of the bankruptcy filing, the lender was required to give him actual notice of the sale. In support of this contention, the debtor cited In re Tome, 113 B.R. 626 (Bankr. C.D. Cal. 1990). In Tome, a bankruptcy court invalidated a foreclosure sale which had been continued five times by announcement while the debtor's bankruptcy case was pending. Despite the fact that the lender had complied with state law, the bankruptcy court found that the sale was invalid. Under the circumstances, the Tome court opined, the lender was required either to publish a new notice of sale or give the debtor actual notice of the sale. The Tully court found the Tome decision unpersuasive and noted that it had been criticized by other bankruptcy courts: e.g., See In re Jauregui, 197 B.R. 673 (Bankr. E.D. Cal. 1996); In re Thomas, 194 B.R. 641 (Bankr. D. Ariz. 1995). Tully, 56 Cal. App. 4th at 663-64.

Virtually all the cases cited by BankFirst were chapter 13 cases in which the debtors failed to complete payments under their plans.[3] As the Debtor correctly notes, BankFirst's citation of these cases as authority ignores the difference between the discharge provisions of chapter 13 and chapter 11. In chapter 13, a debt is not discharged until the plan is fully performed, by which time all past defaults will have been cured. See 11 U.S.C. § 1328(a). In chapter 11, debts

---

[3] The only chapter 11 case cited by BankFirst is Smith, which is discussed in Section A above. In Smith, the lender had filed a judicial foreclosure action. The issue was not whether, after confirmation, the lender was required to re-commence the foreclosure process, but whether the lien had survived confirmation of the chapter 11 plan. See Smith, 216 B.R. at 688-90.

12

are discharged on the effective date of the plan and are replaced by the new debts created by the plan. See 11 U.S.C. § 1141(d)(1). The Plan's provision retaining BankFirst's lien is not inconsistent with this principle. A lien is not a debt; it is security for a debt. Moreover, but for the lien retention provision, BankFirst's lien would not have continued as an encumbrance on the Development Property. See 11 U.S.C. § 1141(c).

BankFirst contends that the Plan provision permitting it to exercise its state law rights in the event of a post-confirmation default indicate that no new notice of sale was required. However, the provision in question states that BankFirst's right under these circumstances is to enforce its claim "as modified [by the Plan]."

In sum, the Court agrees with the Debtor that BankFirst's foreclosure sale violated state law and was invalid. Therefore, BankFirst's motion to dismiss the fourth and fifth claims for relief in the complaint will be denied.

**CONCLUSION**

BankFirst's motion to dismiss the first and second claims for relief will be granted. At the time the foreclosure sale was conducted, the Plan had not yet been substantially consummated. Therefore, the Development Property was still property of the Debtor's bankruptcy estate. However, the Plan provision permitting BankFirst to exercise its state law rights in the event of a post-confirmation default eliminated the need for BankFirst to first obtain relief from the automatic stay. Moreover, the Plan provision permitting the

13

Debtor a reasonable time to cure post-confirmation defaults related only to defaults under the note and deed of trust.

BankFirst's motion to dismiss the fourth and fifth claims for relief will be denied. Confirmation of the Plan discharged BankFirst's pre-existing debt and replaced it with a new debt created by the Plan. Prior to March 4, 2009, the Debtor was not in default on this new debt. When the Debtor did default, state law required BankFirst to commence a new foreclosure process, including by recording a new notice of default.

Counsel for the Debtor is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

James D. Wood
Law Offices of James D. Wood
3675 Mt. Diablo Blvd. #250
Lafayette, CA 94549-3775

Thomas Greco
Turner, Reynolds, Greco and O'Hara
16485 Laguna Canyon Rd., #250
Irvine, CA 92618

Joshua D. Wayser
Katten Muchin Rosenman
2029 Century Park E #2600
Los Angeles, CA 90067